*LAW OFFICES OF RICHARD L. PRESS & ASSOCIATES, LLC*
*By: Richard L. Press, Esquire (ID #014941978)*
23 East Black Horse Pike
Pleasantville, New Jersey 08232
(609) 641-2900
Attorneys for Plaintiffs
Our File No.:  12-134

RECEIVED and
FILED

JUL 2 5 2014

ATLANTIC COUNT'

| | | |
|---|---|---|
| Maryanne Klemmer, Bruce Pearlman and Gerald Florio, | : | SUPERIOR COURT OF NEW JERSEY ATLANTIC COUNTY – LAW DIVISION |
| Plaintiffs, | : | Civil Action  L - 5030-14 |
| v. | : | |
| Trump Entertainment Resorts (a Delaware Corporation), Trump Taj Mahal Associates, LLC (a New Jersey Corporation), John M. Donnelly, Esquire, John Doe Decision-makers (Plural 1-10) and John Doe Individuals Who Secretly Recorded Plaintiffs (Plural 1-10), | : : : : | *COMPLAINT AND JURY DEMAND* |
| Defendants. | : | |

Plaintiffs, Maryanne Klemmer, Bruce Pearlman and Gerald Florio, all residing in Atlantic County, New Jersey, by way of this wrongful termination, NJLAD and attorney malpractice claim, state as follows:

### COUNT ONE

1. Klemmer, Pearlman and Florio (hereinafter referred to as Plaintiffs) were employed by Trump Entertainment/Taj Mahal Associates (hereinafter referred to as Taj) as Shift Managers from January 23, 2012 through August 4, 2012 when they were terminated for an alleged reason of a reduction in force (RIF). On August 8, 2012, Taj changed the reason for Plaintiffs' termination to a change in management style and outlook.  Both of these reasons were a pretext for the real reason for Plaintiffs' terminations which involved their participation in an employer investigation about claims by terminated Taj Table Games Supervisors who were alleging

various forms of discrimination as a result of a large number of terminations taking place after Plaintiffs and others conducted an evaluation process in February 2012.

2. Taj and their counsel, Mr. John Donnelly, Esquire (hereinafter Mr. Donnelly) interviewed Plaintiffs on July 25, 2012, secretly audiotaped the interview and then without prior notice or warning of disciplinary action, terminated Plaintiffs five working days later on August 4, 2012.

3. Taj and Mr. Donnelly conducted an employer investigation into allegations by approximately 18 former Taj Table Games Supervisors who were alleging age discrimination and other violations of law when they were terminated in February 2012 following an interview and evaluation process which Plaintiffs participated in. Taj had apparently received letters from attorneys representing some or all of these previously terminated Table Games Supervisors, alleging various forms of discrimination and other illegal reasons for their termination. Age discrimination was a major reason being alleged by these former employees.

4. In response to these letters and claims of discriminatory termination, Taj began an internal employer investigation into these claims beginning with a lengthy interview of Plaintiffs, one former Shift Manager involved in the February evaluations Ms. Long, Taj Human Resources Representative Ms. Marilyn Pyott, Taj Human Resources Consultant Mr. Keyser and Mr. Donnelly on July 25, 2012.

5. Taj and their counsel Mr. Donnelly secretly recorded this meeting. This audiotape recording of this meeting was never revealed to Plaintiffs until a transcript of the meeting surfaced in April 2014 after Mr. Donnelly and his Associate Mr. Hoffman had deposed each of the Plaintiffs on various occasions. It was not until these Depositions of Plaintiffs and Ms. Long were completed.that the existence of an audiotape and transcript of this audiotape of the July 25, 2012 meeting were revealed by Taj attorney Mr. John Hoffman, who published the transcript of

2

the entire meeting and reported the existence of an audiotape of that meeting to an attorney who is representing approximately 18 former Taj Mahal Table Games Supervisors terminated in February 2012.

6. Mr. Hoffman's April 22, 2014 letter and attached transcript captioned "Supervisors Termination Meeting July 25, 2012" reveals that Mr. Donnelly conducted the meeting and that his various statements to Plaintiffs, their responses and the entire meeting is recorded. There was never a mention of any audiotape of that meeting when Mr. Donnelly took the Depositions of Plaintiffs in connection with the lawsuit brought by approximately 18 Table Games Supervisors all of whom are represented by Mr. Laurence Bafundo, Esquire. Plaintiffs are told at this meeting that Taj and Mr. Donnelly would represent Plaintiffs named in any lawsuit involving these February 2012 terminations and in fact represented to Plaintiffs that they could consider Mr. Donnelly as their attorney in this regard. The transcript of this secretly recorded interview makes it clear that Plaintiffs should consider themselves as represented by Mr. Donnelly. Statements made by Mr. Donnelly to Plaintiffs also include the following:

   a. "I do not represent any of you, personally, I represent the company, including Marilyn and Craig. I don't represent you personally. The company right now will indemnify you against any claim. And what does that mean? That means the company will defend you if they name you and if they name you as a John Doe.";

   b. "But if everybody just was going about doing their job as they were asked to do and there's nothing extraordinarily, then we will, we will defend you and protect you, if you get named. It's possible you won't be named, they may just name the company and Mario and the people they know. You will certainly be deposed.";

   c. "But what I'm trying to do today is get down in black and white what went on so that we are available or we can defend this when the proverbial stuff hits the fan and we know what happened.";

3

d. "Please tell me that because if anyone contacts you, because you should consider yourselves as represented by us for the purposes of this action. And by the way, you know, one of the things I forgot to tell you, you don't have to be represented by me. You can fire me at any time you want and say, I want to have Joe Blow represent me. But my name is John Donnelly, it is D-O-N-N-E-L-L-Y. And my office, I'm in town, I'm on Chelsea and Atlantic, it's 348-1300 and phone number is – actually, I got a bunch of cards in my other room.";

e. "348-1300 is the phone number and my cell is 214-2138. And I'll give you my business card before I leave, just remind me. Anything – by the way, if you want to call me separate away from this group and away from Marilyn and Craig, feel free to call me. And if you tell me. Don't tell Craig or Marilyn or Mario or anyone else; I won't tell them. So – because I – although I don't represent you, I'm representing you because you will be sued, I don't represent you personally, you will be sued in your capacity as working here and because of something you did when you were employed here.";

f. "If you have documents. . .either get them to Marilyn or Craig, or make copies and give – I assume just have the original, but keep copies yourself, if you want. So get the documents to Marilyn or Craig so we have all of them.";

g. "Alright. Anything – again, if you have any questions that you felt that, I didn't want to ask in the group, give me a call."

7. Plaintiffs voluntarily participated in and cooperated in this employer investigation and were then terminated five working days later on August 4, 2012 allegedly because they were part of a RIF. On August 8, 2012, however, Taj stated to Plaintiffs that they should disregard the RIF as their reason for termination and that the new reason is that there was a change in management style. Neither of these reasons are true. The multiple reasons for termination clearly raise the issue of pretext. If neither of these reasons are worthy of belief then a reasonable fact-finder can determine or infer that the underlying reason for Plaintiffs' terminations was based upon some form of illegal retaliation and/or some illegal employer motivation.

4

8.  Given the temporal proximity, multiple reasons by Taj for Plaintiffs' terminations and other circumstantial evidence, the reasonable inference is that Plaintiffs were terminated after participating in a legal process conducted by the employer who was investigating claims of age discrimination or other forms of illegal termination. Plaintiffs' participation in this process on July 25, 2012 and continuing up until they were terminated on August 4, 2012 are considered protected activities by the New Jersey Law Against Discrimination (NJLAD), Taj Policies and Procedures and Casino Control Commission Rules and Regulations, including but not limited to, *N.J.S.A. 5:12-80, et seq.*

9.  Plaintiffs allege that they participated in the employer investigatory process and continued to cooperate by providing documents and other information to the Defendants up until their terminations on August 4, 2012. Their participation in this process was required by law.  They could not avoid participating, particularly given the statements made to them and others at the meeting of July 25, 2012.  Once they fully cooperated in the investigatory process, they were immediately fired.

10. Based upon the meeting of July 25, 2012 and the events between July 25, 2012 up until August 4, 2012, Taj perceived Plaintiffs as supporting the terminated employees or perceived them as potential liabilities should they be sued by the employees and/or have their Depositions taken.  The Taj believed that now that Plaintiffs' statements were secretly recorded and on an audiotape, they no longer needed Plaintiffs' cooperation and that each of the Plaintiffs were expendable.

11. Plaintiffs participated in the process of beginning the necessary and required internal employer investigation and their participation is protected by the anti-retaliation provisions of the NJLAD, specifically *N.J.S.A. 10:5-12(d)*. These protections from retaliation apply not only to an employee who speaks out against discrimination, but also to those employees who answer questions during an employer's internal investigation which the employer believes may be helpful to the employees claiming discrimination. Plaintiffs cannot be terminated because they participated in an employer investigation, were secretly recorded by the employer and their attorney and are now deemed expendable. Such conduct would clearly discourage an employee from participating in any way (positive or negative) into an employer-conducted investigation of alleged discriminatory practices.

12. The bottom line in this case is that Plaintiffs were terminated because they participated in the employer investigation into alleged discriminatory actions, secretly recorded so they would be comfortable in giving answers, told they could consider themselves represented by Mr. Donnelly and then terminated after they cooperated. This conduct violates the NJLAD and the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

13. Plaintiffs also assert that Taj may have had dual or mixed motives in their decision to terminate, but that the motivating factor was Plaintiffs' voluntary participation into the employer investigation and thereafter the employer's perception that Plaintiffs may testify or assist in any proceedings brought against Taj as a result of the February terminations. They were perceived by Taj as potential liabilities and therefore terminated.

6

14. In this case, each of the Plaintiffs were engaged in protected activities known by the Taj and their Human Resources employees, they were subjected to an adverse employment decision terminating them as a result of that involvement and there is clearly a causal connection between the protected activity and the retaliation because of Taj considering each of them as potential weak links who may provide some positive information in regards to the February 2012 terminations. The causal connection can be demonstrated by evidence of circumstances that justify an inference of retaliatory motives, such as protected conduct closely followed by the adverse action. It can also be demonstrated by evidence that Plaintiffs were treated differently from others after they engaged in the protected activities. Once these factors are satisfied, the Defendants can simply articulate any legitimate, non-retaliatory reason for the adverse action. If the Defendants meet this minimum burden, then Plaintiffs must demonstrate by a preponderance of the evidence that a discriminatory intent motivated Defendants' actions. They can do this indirectly by proving that Defendants' proffered explanation is a pretext for retaliation, or directly, by demonstrating that a discriminatory reason more likely than not motivated the employer's actions. In this case, the Taj's multiple reasons for Plaintiffs' terminations, in and of itself, creates a pretext.

15. As a result of the conduct of the Defendants in this case and giving all reasonable inferences to the events which occurred on July 25, 2012 through August 4 and August 8, 2012, Plaintiffs assert in this Count that the Taj Defendants terminated them in violation of the anti-retaliation rules as set forth in the New Jersey Law Against Discrimination, Title VII of the Civil Rights Act, Taj Policies and Procedures and Casino Control Commission Rules and Regulations. Plaintiffs assert that they were perceived by

7

Defendants as potential weak links who may prove to be helpful to the individuals asserting that the February 2012 terminations were based on age or other illegal criteria. Given the secret audiotape, Defendants believed that Plaintiffs were now expendable.

**WHEREFORE**, Plaintiffs, Maryanne Klemmer, Bruce Pearlman and Gerald Florio, on this Count as against Trump Entertainment Resorts and Taj Mahal Associates, state that they were terminated in violation of law because of their participation in the Defendants' investigation and the perception by Defendants that Plaintiffs may assist or be helpful to potential individuals bringing claims against Taj. Defendants terminated Plaintiffs in retaliation for their involvement in the employer investigation and in retaliation for Defendants' belief that each of them could be a weak link which would assist these terminated employees in some fashion. Because of this perception, reasonable or otherwise, Plaintiffs were terminated for multiple and pretextual reasons. Each of the Plaintiffs therefore seek any and all damages that may be permissible pursuant to the New Jersey Law Against Discrimination, including but not limited to, loss of salary and wages, past lost wages and future lost wages, reimbursement of any and all expenses incurred by each of the Plaintiffs in searching for other work and employment, loss of fringe benefits, loss of health insurance and the costs of securing other comparable benefits, loss of 401(k) and other pension benefits, compensatory damages in regards to emotional and physical pain and suffering suffered by Plaintiffs and as outlined as permissible damages by _N.J.S.A. 10:5-31_, relocation costs, prejudgment interest as permitted by law, punitive damages as a result of the Defendants' retaliatory actions and an award of counsel fees and costs as may be permitted pursuant to the New Jersey Law

8

Against Discrimination and its related Administrative Regulations.  Plaintiffs seek such other damages and relief as may be permitted by the Court or jury in this case.

## COUNT TWO

1.  Plaintiffs repeat and incorporate each and every allegation contained in the preceding Count One as if same were set forth at length herein and make them Paragraph 1 of this Count Two.

2.  This Count against Taj asserts direct age discrimination in violation of the NJLAD. Specifically, Plaintiffs' ages at the time of termination in August of 2012 were 53 (Mr. Florio), 56 (Ms. Klemmer) and 53 (Mr. Pearlman).  Because of their ages and their previous participation in the interview and evaluation process in February 2012, Plaintiffs became excellent targets by Taj for termination because their ages were comparable with the groups of Supervisors who were alleging age discrimination from the February 2012 terminations.

3.  Terminating Plaintiffs lent "plausible denial" to any claim by other individuals that age was a factor when the Taj could argue that the three Shift Managers who had evaluated the employees in February 2012 were also terminated and therefore age made no difference.

4.  The Vice President of Casino Operations, Mr. DiGuiseppe, would use the term plausible denial as a buzz-word for creating an employment situation that Taj could argue which would be difficult to challenge.  By terminating Plaintiffs, Taj improved their arguments that age was not a factor in the February 2012 terminations and that economic considerations were the only reasons and that despite Plaintiffs' ages, Taj continued to cut back their personnel due to economic considerations in the alleged RIF which was the first alleged reason for Plaintiffs' terminations.

5.   Further, Taj's first reason for termination asserting a reduction in force which listed the August 4, 2012 terminations of six individuals all of whom were in their 50's who were terminated in on August 4, 2012. Another name on the employee list involved an employee who was only 36 years of age, however, she was let go on July 13, 2012 and her termination was completely unrelated.

6.   Taj used Plaintiffs' ages to create a viable defense or another level of plausible deniability to any claims that could be made by the supervisory employees who were evaluated by Plaintiffs who were all Shift Managers. In this regard, Plaintiffs' ages were a motivating factor together with the retaliation against Plaintiffs and therefore a factor in the Taj decision to terminate Plaintiffs on August 4, 2012.

7.   The Taj also utilized Plaintiffs as an example in terminating them that these individuals, despite their ages, were not treated any differently or any better than anyone else. They were not rewarded in any way for evaluating any of the Table Games Supervisors who were let go in February 2012.

8.   Of course Taj changed the RIF reason to the amorphous reason of "management style" but still accomplished its goal of sacrificing Plaintiffs to improve their arguments against age discrimination in threatened litigation by approximately 26 supervisory employees.

9.   There simply was no RIF and Plaintiffs were given this reason the same day, August 4, 2012. There was no RIF announcement by Taj and no paperwork supplied to Plaintiffs to even establish that the Taj conducted some economic analysis to support the RIF. The second reason given, management style, is also implausible given the complete absence of disciplines against Plaintiffs or even discussions which criticized their management styles. This reason as well as blatantly false.

10

10. The Taj had mixed motives in this case based both upon retaliation (Count One) and sacrificing Plaintiffs because of their age to improve their arguments against any proposed age discrimination lawsuits.

11. The Taj articulated reasons are untrue and intentional discrimination and retaliation (as set forth in Count One) were more likely than not a determinative factor in the decision.

12. In this case, Taj is not providing the entire story and has behaved inconsistently and in a contradictory fashion in regards to the reasons for Plaintiffs' terminations.

13. Defendants terminated Plaintiffs to improve their legal position which in this case required an analysis of their various ages. The traditional burden-shifting analysis in this setting would not be applicable. In this case, age and retaliation were the motivating factors which violated Plaintiffs' rights under the NJLAD.

14. As a result of the conduct of the Defendants in this case and giving all reasonable inferences to the events which occurred on July 25, 2012 through August 4 and August 8, 2012, Plaintiffs assert in this Count that the Taj Defendants terminated them in violation of the anti-retaliation rules as set forth in the New Jersey Law Against Discrimination, Title VII of the Civil Rights Act, Taj Policies and Procedures and Casino Control Commission Rules and Regulations. Plaintiffs assert that they were perceived by Defendants as potential weak links who may prove to be helpful to the individuals asserting that the February 2012 terminations were based on age or other illegal criteria. Given the secret audiotape, Defendants believed that Plaintiffs were now expendable.

**WHEREFORE**, Plaintiffs, Maryanne Klemmer, Bruce Pearlman and Gerald Florio, on this Count as against Trump Entertainment Resorts and Taj Mahal Associates, state that they were terminated in violation of law because of their participation in the

11

Defendants' investigation and the perception by Defendants that Plaintiffs may assist or be helpful to potential individuals bringing claims against Taj. Defendants terminated Plaintiffs in retaliation for their involvement in the employer investigation and in retaliation for Defendants' belief that each of them could be a weak link which would assist these terminated employees in some fashion. Because of this perception, reasonable or otherwise, Plaintiffs were terminated for multiple and pretextual reasons. Each of the Plaintiffs therefore seek any and all damages that may be permissible pursuant to the New Jersey Law Against Discrimination, including but not limited to, loss of salary and wages, past lost wages and future lost wages, reimbursement of any and all expenses incurred by each of the Plaintiffs in searching for other work and employment, loss of fringe benefits, loss of health insurance and the costs of securing other comparable benefits, loss of 401(k) and other pension benefits, compensatory damages in regards to emotional and physical pain and suffering suffered by Plaintiffs and as outlined as permissible damages by _N.J.S.A. 10:5-3_, relocation costs, prejudgment interest as permitted by law, punitive damages as a result of the Defendants' retaliatory actions and an award of counsel fees and costs as may be permitted pursuant to the New Jersey Law Against Discrimination and its related Administrative Regulations. Plaintiffs seek such other damages and relief as may be permitted by the Court or jury in this case.

## COUNT THREE

1. Plaintiffs repeat and incorporate each and every allegation contained in the preceding Counts as if same were set forth at length herein and make them Paragraph 1 of this Count Three.

2. This Count is brought against Taj for designating Plaintiffs as ineligible for rehire resulting in each of the Plaintiffs losing out in employment opportunities in other Trump properties and anywhere within the Trump Entertainment group. Plaintiffs also lost employment opportunities outside of the Trump organization due to perspective employers being advised that they were ineligible for rehire.

3. In this Count, Plaintiffs claim continued retaliation and a breach of a specific verbal and written agreement provided to Plaintiffs by the Taj Executive Director of HR, Ms. Judy Fisher, in a letter to each Plaintiff dated August 4, 2012 advising them that they are "eligible to apply for any open position within the company for which you are qualified. The staffing department will assist you with this process." Similarly, Mr. David Hughes, Corporate EVP and CFO of the Trump Entertainment Resorts, Inc., promised in writing and verbally to each Plaintiff that he would remove the incorrect notation of each of the Plaintiffs being ineligible for rehire. He had the authority to bind both Trump Entertainment and the Taj in his agreement to remove Plaintiffs from the ineligible for rehire list.

4. Similarly, Taj Mahal Associates' In-house Vice President of Legal, Mr. Cunningham and Taj HR Representative, Ms. Pyott, also agreed to change the ineligibility for rehire to the previously agreed upon eligibility for rehire.

5. Despite promises and specific statements to each Plaintiff in writing and verbally that they would be considered eligible for rehire, their designation was never changed.

13

6. Failing to change their designation as agreed upon, evidenced a continued pattern of retaliation against Plaintiffs beyond August 4, 2012 and August 8, 2012 in further violation of the NJLAD, breach of verbal agreement between each of the Plaintiffs, the Taj Mahal Associates, LLC and the Trump Entertainment Resorts.

7. As a result of the breach of the specific agreement as set forth above with each Plaintiff and because of the refusal to change the "ineligible for rehire" status, each of the Plaintiffs lost opportunities at employment both in New Jersey and in various casinos outside of New Jersey. It took many of the Plaintiffs months before they could get any employment because they were labeled as ineligible for rehire.

**WHEREFORE**, Plaintiffs demand on this Count as against the Taj Defendants compensatory damages, loss of income, delayed employment and compensation for lost employment opportunities. Plaintiffs bring this Count as against Taj Defendants in this case for both breach of written and verbal agreements and for continued retaliation in violation of the NJLAD and demand damages for lost employment opportunities, damages for ongoing expenses incurred in Plaintiffs' efforts to secure re-employment, damages for emotional distress in remaining unemployed for considerable periods of time, damages for emotional and physical upset, punitive damages as may be permitted pursuant to the NJLAD and counsel fees and costs as may be permitted pursuant to the NJLAD. Plaintiffs also seek the equitable relief in this Count of compelling the Taj Defendants to live up to their previous agreements and to change Plaintiffs' designation so that they are now eligible for rehire.

## COUNT FOUR

1.  Plaintiffs repeat and incorporate each and every allegation contained in the preceding Counts as if same were set forth at length herein and make them Paragraph 1 of this Count Four.

2.  This Count is brought by Plaintiffs as against the Taj Defendants for violation of the Trump Entertainment Resorts Employee Handbook which was the only handbook provided to each of the Plaintiffs at their orientation on January 23, 2012. Plaintiffs assert that this Employee Handbook created an implied contract between employer and Plaintiffs requiring progressive discipline and other forms of employment protection. This Handbook does not contain a disclaimer indicating that Plaintiffs are employees at-will regardless of the promises set forth in the Trump Entertainment Resorts Handbook provided to each Plaintiff.

3.  Further, this Count is brought as against the Taj Defendants for violation of the obligation of good faith and fair dealing pursuant to the terms of the Handbook.

4.  In addition to the Employee Handbook, Mr. DiGuiseppe indicated to each of the Plaintiffs when they were hired that they would become "permanent employees" after 90 days. In fact, Plaintiffs passed the original 90 days from January 23 to May 23, 2012 without any negative incident or criticism, but Mr. DiGuiseppe and others who were supervising Plaintiffs and who were within the Defendants' HR Department further indicated that another 90 days was required for both benefits and a permanent status. Plaintiffs continued to work without any negative criticism and finally on July 23, 2012 they were granted benefits and a status as permanent employees.

5.  Despite the specific promises contained within the Employee Handbook and the requirement that the Taj Defendants act in good faith and deal fairly with Plaintiffs in regards to the terms and conditions of their employment, Plaintiffs were terminated without cause on

15

August 4, 2012. This termination violated the terms and conditions of Plaintiffs' employment including statements about Equal Employment Opportunity, non-retaliation, Rules of Conduct, progressive discipline, Employee Relations Policies and Procedures, and Employee Handbook discussions of Casino Control Commission Rules and Regulations.

6. As a result of the Taj Defendants' breach of very clear and unambiguous verbal promises, written promises as is set forth in the Trump Entertainment Resorts Handbook and the consideration provided by extending Plaintiffs' probationary period until July 23, 2012, the Taj Defendants violated the terms, conditions and promises as set forth above that Plaintiffs would be considered "permanent employees" and be extended certain job security including, but not limited to, progressive discipline. It is further asserted that despite the legal definition placed upon these employment promises and the statements contained within the Handbook that a breach of these verbal promises and statements contained in the Handbook can be used to establish disparate treatment of Plaintiffs and would further support Plaintiffs' claims of wrongful termination and violation of specific verbal promises and the Handbook.

7. As a result of the Taj Defendants' violation of the 2012 Employee Handbook, express verbal agreements as to the extending of probation until July 23, 2012 and for violation of the Defendants' obligation of good faith and fair dealing in regards to Plaintiffs' employment (including but not limited to job security and progressive disciplines), Plaintiffs were wrongfully terminated in violation of the terms and conditions as agreed upon and as unambiguously expressed both verbally and in writing to Plaintiffs concerning the terms and conditions of their employment.

**WHEREFORE,** Plaintiffs demand judgment on this Count as against the Taj Defendants for loss of income, back pay and front pay, prejudgment interest, damages for having to look for

employment, relocate in order to secure employment and all related expenses and damages caused by the Defendants' violation of implied and express agreements with Plaintiffs concerning the terms and conditions of their employment.

## COUNT FIVE

1.  Plaintiffs repeat and incorporate each and every allegation contained in the preceding Counts as if same were set forth at length herein and makes them Paragraph 1 of this Count Five.

2.  This Count is brought as against the Taj Defendants and Mr. Donnelly for violation of the New Jersey Wiretapping and Electronic Surveillance Control Act, _N.J.S.A. 2A:156A-1._ It is clear that someone at the July 25, 2012 meeting with Plaintiffs secretly tape recorded the entire interview between Taj, its Human Resources employees and the Taj attorney Mr. Donnelly. The meeting was planned at the direction of Defendants and Plaintiffs voluntarily appeared. It became immediately obvious that the purpose of the meeting was to discuss threatened litigation against Taj, its employees and possibly each of the Plaintiffs in this matter. The purpose of the meeting was to gather information about Plaintiffs' interview and evaluation process of the employees who were terminated in February 2012. Mr. Donnelly expressly stated that the Taj and he would be representing Plaintiffs in this threatened litigation and that each of the Plaintiffs could consider themselves represented by Mr. Donnelly who also stated that he would keep their confidential communications between one another away from anyone else and that they could feel free to contact him at any time to discuss this matter without fear that he would advise Taj or any of their representatives.

3.  In this context, the Taj Defendants and Mr. Donnelly were acting under "color of law to intercept. . .an oral communication." _N.J.S.A. 2A:156A-4(d)_ states as follows:

"A person not acting under color of law to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception unless such communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act... any person who unlawfully intercepts or uses such communication as provided in this paragraph shall be subject to the civil liability established in §24....in addition to any other criminal or civil liability imposed by law."

4.  Regardless of who tape recorded the conversation, both Taj and Mr. Donnelly used the secretly recorded meeting with full knowledge against Plaintiffs, particularly in their Depositions.

5.  This conduct obviously indicates attorney ethics issues and the duty of truthfulness that must be provided to clients and third parties particularly in view of Mr. Donnelly's statement during this meeting that Plaintiffs can consider themselves represented by the Taj and Mr. Donnelly and that they can contact him and he will keep their conversations with him confidential. Some of these issues are dealt with in the next Count involving attorney malpractice/malfeasance.

6.  In this Count, Plaintiffs reasonably believed and were told that they were involved in a legal process and that the purpose of the interview was to determine whether there was discriminatory intent when Plaintiffs interviewed several Supervisors in February 2012, which became the subject of litigation against the Taj Defendants.

7.  In this Count, Plaintiffs assert that the actions of the Taj Defendants and their counsel Mr. Donnelly and Mr. Donnelly in his supervision of his associate, violated the New Jersey Wiretapping Statute and that a continuing violation occurred beginning July 25, 2012 and ending when finally revealed on April 22, 2014.

18

8. It is obvious that an attorney cannot secretly record his client, third persons or anyone else without their permission or without a Court Order (*In the Matter of Gary Barton, DRB 80-57, Apr. 30, 1980*) and it is of particular concern in this case since Defendants and their counsel continued to withhold the existence of the secret recording as a legal strategy when asking Plaintiffs questions at their respective Depositions and by asking Plaintiffs questions about what was said at that July 25, 2012 meeting in order to elicit contradictory statements or to test Plaintiffs' recollection of the meeting and what was stated at the meeting.

9. On July 25, 2012 Plaintiffs were ordered by Taj Human Resources personnel including Ms. Pyott to attend a meeting at Defendants' property to discuss with Taj Human Resources personnel and their private counsel Mr. Donnelly the evaluation process used and the termination of various employees in February 2012. Each of the Plaintiffs were at this meeting as a result of various letters received by the Taj Defendants and Mr. Donnelly which threatened litigation. Plaintiffs were at this meeting as part of the employer investigation process as well as in order to provide information to Taj representatives and their attorney in order to allow the Taj to prepare a defense to any lawsuit which Defendants stated were certain to be filed.

10. Under these circumstances the Taj and Mr. Donnelly were acting under "color of law" and Plaintiffs were told that they were at that meeting not only to prepare a legal defense but also to discuss their status as potential Defendants and their representation by the Taj and Mr. Donnelly.

19

11. As discussed in Count One, the Taj Defendants and Mr. Donnelly interviewed Plaintiffs extensively and secretly recorded the entire session which ultimately resulted in a 55 page transcript which was prepared from the audio recording by a certified Court Reporter on November 4, 2013. Plaintiffs were never advised of this recording.

12. Further, Mr. Donnelly and his associate Mr. Hoffman deposed each of the Plaintiffs over a one year time period and during these Depositions, each Plaintiff was asked questions about what was stated by them and others at the meeting. The unfairness of this is obvious, but what is much worse is that this audiotape which was transcribed on November 4, 2013 was never revealed and was clearly prepared for purposes of litigation. The Depositions of the three Plaintiffs in this matter continued for many months after the transcription and neither Mr. Donnelly nor his associate Mr. Hoffman advised Plaintiffs that there was a secret audiotape and transcript.

13. Mr. Donnelly, the Taj Defendants and Mr. Donnelly's associate who he was supervising, must have known of the secret recording and the transcription, but continued to hide its existence until the Depositions of each of the Plaintiffs was completed. It was finally revealed in a letter dated April 22, 2014 from Mr. Hoffman to Mr. Bafundo who is representing several of the Supervisors terminated in February 2012.

14. *N.J.S.A. 2A:156A-4* generally stands for the proposition that if a single participant to a voluntary oral communication agrees to the taping, then it is not a violation of the Act. This does not apply, however, when a person is acting under color of law or if the communication is used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of the State of New Jersey or for committing any other injurious act.

20

15. In this case, regardless of who was conducting the secret recording on July 25, 2012, it was clear that the entire meeting was conducted for purposes of conducting an employer investigation as well as in preparing a legal defense to the various letters which Mr. Donnelly stated were threatening litigation alleging age discrimination and other alleged illegal conduct by the Taj and by each of the Plaintiffs in conducting the evaluations of approximately 26 Table Games Supervisors, conducted by each of the Plaintiffs and Ms. Long throughout February of 2012.

16. In determining whether a person is acting under color of law, it is the interceptor's purpose which is the dispositive factor, not whether the means he employs is tortious or criminal. In this case, the purpose of the secret recording was to gather information from each of the Plaintiffs in regards to several threats of litigation against the Taj Defendants. In this case it is clear that the Taj Defendants and Mr. Donnelly were using Mr. Donnelly's status as the Taj attorney both to gather information from Plaintiffs as well as to advise them that he would be representing them in any lawsuits and that he could consider both himself and the Taj as representing each of them as of July 25, 2012. Each of the Plaintiffs would have reasonably believed that everyone in that room was acting under the color of law to secure information from each of the Plaintiffs, give them advice as well as to explain to them the litigation process and what could be expected in Depositions and other legal proceedings.

17. _N.J.S.A. 2A:156A-17_ discusses the disclosure or use of the contents of a oral communication or derivative evidence and discusses the usage of such evidence by law enforcement officers or other persons who have obtained knowledge of the contents of a secretly recorded oral communication.   The Statute states that the contents of the

21

intercepted oral communication or any evidence derived from that may otherwise be disclosed or used "only upon a showing of good cause before a Court of competent jurisdiction". In this case, Mr. Donnelly and his associate disclosed the contents of the audiotape when supplying the transcript of same to Mr. Bafundo on April 22, 2014. The transcript of Plaintiffs' discussions with Mr. Donnelly and the Taj Human Resources employees was never disclosed directly to the Plaintiffs and there was never any authorization by any of the Plaintiffs to allow the disclosure.

18. It is clear that Mr. Donnelly and the Taj Defendants were utilizing this secretly recorded session in every conceivable way to their advantage and to the detriment of each of the Plaintiffs. Neither Mr. Donnelly nor his associate requested or received Plaintiffs' permission either to secretly record the July 25 session, to have it transcribed in November 2013 and thereafter to disclose it to the attorney for several of the Table Games Supervisors who were evaluated by Plaintiffs and then terminated during a later meeting with each of the Plaintiffs. The design and use of this recording was to inflict the maximum damage against Plaintiffs in any action that they may independently bring for their own alleged wrongful terminations.

19. Under these circumstances, each of the Plaintiffs must bring this civil action claim for unlawful recording and disclosure of the recording as well as seeking all damages and attorneys fees that may be permitted under *N.J.S.A. 2A:156A-24* including actual damages which cannot be less than the liquidated damages computed at the rate of $100 a day for each day of violation or $1,000 whichever is higher, punitive damages as well as reasonable attorneys fees and other litigation costs reasonably incurred. Plaintiffs also seek equitable and declaratory relief in this action pursuant to *N.J.S.A. 2A:156A-32* which

22

would include a necessary Order which would attempt to undo any damage to Plaintiffs caused by the illegal interception of the meeting and the usage of the audiotape and transcript and then the disclosure of the transcript without Plaintiffs' permission. Plaintiffs will be seeking damages from July 25, 2012 through April 22, 2014 (at a minimum) when it was disclosed to Mr. Bafundo without Plaintiffs' knowledge or permission. Plaintiffs assert that the only method of equitable or declaratory relief which can minimize any harm to Plaintiffs would necessitate the sanction of suppressing the audiotape, its transcription as well as the Deposition transcripts of each of the Plaintiffs in this action who have been injured as a result of the conduct of the Taj Defendants and Mr. Donnelly. This is particularly significant in this case where Mr. Donnelly established an attorney-client relationship between himself and each of the Plaintiffs as it involved any threats of litigation against them or ultimately the actual litigation which was filed. Each of the Plaintiffs should also be entitled to counsel fees and costs for having to bring this Count as against the Taj Defendants and Mr. Donnelly. It is submitted that the Court may frame a remedy in this action to minimize or erase the "fruits of the poisonous tree" which began on July 25, 2012 and which has continued to date.

**WHEREFORE**, each of the Plaintiffs in this action bring this Count as against the Taj Defendants and Mr. Donnelly for violation of the New Jersey Wiretapping Statute and seek all appropriate damages that may be permitted by the Statute including, but not limited to, equitable or declaratory relief to undo the damage caused, punitive damages, counsel fees and costs, liquidated damages beginning July 25, 2012 and such other relief as may be permitted pursuant to the Statute and for such other relief as may be permitted by the Court.

23

## COUNT SIX

1.  Plaintiffs repeat and incorporate each and every allegation contained in the preceding Counts as if same were set forth at length herein and make them Paragraph 1 of this Count Six.

2.  Plaintiffs bring this Count against John M. Donnelly, Esquire, an attorney licensed in the State of New Jersey, who established an attorney-client relationship with Plaintiffs on July 25, 2012 as is set forth very specifically in Count One of this Complaint.

3.  Once Mr. Donnelly assumed representation of Plaintiffs, even in a limited capacity, he cannot thereafter act against their interests.

4.  Mr. Donnelly owed an obligation to each Plaintiff to maintain their confidentiality and to protect their interests in the attorney-client privilege.

5.  Mr. Donnelly owed an obligation to each Plaintiff not to deceive or mislead them in any way.

6.  Mr. Donnelly owed the obligation to each Plaintiff to respect the attorney-client privilege and relationship between attorney and client which included statutory, common law and ethical responsibilities to act reasonably and in a professional manner towards each of the Plaintiffs and to maintain the standards of attorney professional performance as set forth in _N.J.S.A._ _2A:13-4._

7.  Mr. Donnelly owed ethical obligations to each Plaintiff as set forth in the New Jersey Rules of Professional Conduct including maintaining the confidentiality of information pursuant to _R.P.C._ _1.6_, avoiding any conflict of interest and would maintain a duty to Plaintiffs even if they are considered former clients. As per _R.P.C._ _1.9_ [duties to former clients], "a lawyer who has represented a client in a matter shall not thereafter represent another client in the same or substantially related matter in which that client's interest are materially adverse to the interests of

24

the former client unless the former client gives informed consent confirmed in writing". Neither

Mr. Donnelly nor anyone from his Law Firm nor anyone who is affiliated with Mr. Donnelly in

an "of counsel" relationship, cannot use information relating to the representation of the

Plaintiffs to the disadvantage of Plaintiffs, reveal information relating to the representation or to

act in any way against the former clients' interests.

8.  Even if Mr. Donnelly was retained by the Taj at some point on or before July 25, 2012,

his actions and statements to Plaintiffs established dual representation of both Taj and Plaintiffs

pursuant to *R.P.C. 1.13(e)*.

9.  Mr.  Donnelly owed an obligation to Plaintiffs whether or not they are considered clients

not to conceal a document or other material having potential evidentiary value or to assist

another attorney or another person to conceal the document. In this case, this obligation would

apply to both the audiotape and the transcript of the audiotape. Mr. Donnelly had to comply with

*R.P.C. 3.4* in regards to fairness to the opposing party and opposing counsel in regards to the

continued use of the audiotape and the transcript of the audiotape.

10. Mr. Donnelly owed an obligation pursuant to *R.P.C. 4.1* to maintain truthfulness in

statements to others including failing to disclose a material fact.

11. Mr. Donnelly owed an obligation pursuant to *R.P.C. 4.3* when dealing with each of the

Plaintiffs on July 25, 2012 to provide them with candid and truthful information as to his role in

any potential litigation and his representation of each of the Plaintiffs for purposes of the

threatened litigation discussed with each of the Plaintiffs on July 25, 2012.

12. Mr. Donnelly owed an obligation towards Plaintiffs in regards to the actions of the

"subordinate lawyer" in this case, Mr. John Hoffman, and to advise Mr. Hoffman to conduct

himself in a way which would not violate the Rules of Professional Conduct or in this particular

17. If Mr. Donnelly learned at any time from July 25, 2012 until the transcript and tape were revealed in April 2014 that Plaintiffs had been secretly recorded and that a transcript of that tape had been prepared in November 2013, he had an obligation to advise Plaintiffs or their attorney of the existence of same and to not in any way use the audiotape or the transcript of the audiotape against Plaintiffs' interests.

18. Mr. Donnelly had the obligation in this case not to participate in any conduct between himself and the Taj Defendants in this case that would compromise Plaintiffs' interests in maintaining their employment with Taj or to represent Taj in any proceedings where Plaintiffs' interests might be damaged or compromised.

19. Mr. Donnelly cannot represent the Taj Defendants in this case or any other persons in any action which would become a conflict of interest between himself and each of the Plaintiffs in this case.

20. As a result of what has occurred between Mr. Donnelly and each of the Plaintiffs beginning on July 25, 2012 and thereafter when either he or Mr. Hoffman were deposing Plaintiffs without advising Plaintiffs or their attorney of the transcript or the audiotape, then those actions would violate the Rules of Professional Conduct. At a minimum, the audiotape, the transcript of the audiotape and the Deposition transcripts of each of the Plaintiffs must be suppressed and cannot be used in any fashion by the Taj Defendants against the interests of the Plaintiffs in this action. Anything less would reward Mr. Donnelly and the Taj Defendants for deceitful and misleading conduct.

21. If Mr. Donnelly participated in any discussions with the Taj Defendants leading up to and resulting in Plaintiffs' terminations on August 4, 2012 and August 8, 2012, or if Mr. Donnelly gave advice to the Taj Defendants in regards to Plaintiffs' terminations, or giving advice to the

Taj Defendants about defending any claims that might be brought by Plaintiffs against the Taj Defendants, then he would be responsible for any damages incurred by Plaintiffs including losing their employment and being ineligible for rehire at any Trump Entertainment property. Mr. Donnelly should have recused himself from any discussions with the Taj Defendants in this case that would have compromised in any way each of the Plaintiffs' interests even if they are considered former clients.

22. As a result of Mr. Donnelly's violation of his ethical and professional responsibilities in regards to each of the Plaintiffs stemming from his prior representation of each of the Plaintiffs, each Plaintiff would be damaged and entitled to damages and equitable relief. This would include suppression of the secretly recorded audiotape, the transcript of same and the Depositions of each of the Plaintiffs prior to the filing of this action. If in fact Mr. Donnelly discussed the termination of each of the Plaintiffs' employment or maintaining their status as "ineligible for rehire", then he would be responsible for any and all economic losses and counsel fees incurred by each of the Plaintiffs as a result of their wrongful terminations.

**WHEREFORE**, each of the Plaintiffs in this case demand damages as against Mr. Donnelly if in fact his conduct in any way resulted in Plaintiffs' termination or failure to be rehired by the Trump organization or by other prospective employers and each of the Plaintiffs would demand damages that would properly compensate them for their economic losses from August 4, 2012 through to the current date and ongoing, including but not limited to, counsel fees and costs, prejudgment interest and such other relief as the Court or jury would deem just and appropriate. Plaintiffs also seek in this action equitable and declaratory relief as against Mr. Donnelly and the Taj Defendants in regards to suppression of any secretly recorded audiotape, transcript of the audiotape and each of the Plaintiffs' Depositions.

## COUNT SEVEN

1.  Plaintiffs repeat and incorporate each and every allegation contained in the preceding Counts as if same were set forth at length herein and make them Paragraph 1 of this Count Seven.

2.  The Defendants on this Count, John Doe Decision-makers (Plural 1-10) were involved in the retaliatory and wrongful discharge of each of the Plaintiffs and could be considered aiders and abettors as defined by the NJLAD. It is unknown at this time which specific Decision-makers were involved in each of the Plaintiffs' terminations on August 4 and August 8, 2012. It is also unknown at this time which Taj Officer, Director or employee made the decision to list each of the Plaintiffs as being ineligible for rehire. Plaintiffs must therefore reserve their rights pursuant to the John Doe Rule to later amend this Complaint when and if the names of those individuals are revealed.

**WHEREFORE**, each of the Plaintiffs demand damages in this case as against the John Doe Decision-makers (Plural 1-10) as defined above, for all damages that may be available pursuant to the New Jersey Law Against Discrimination and for such other relief as the Court or jury may deem just and appropriate.

## COUNT EIGHT

1.  Plaintiffs repeat and incorporate each and every allegation contained in the preceding Counts as if same were set forth at length herein and make them Paragraph 1 of this Count Eight.

2.  Defendants on this Count John Doe Individuals Who Secretly Recorded Plaintiffs (Plural 1-10) actually recorded the July 25, 2012 meeting or otherwise authorized the secret recording and thereafter failed to reveal the existence of the audiotape and the transcript of same until April 2014. It is unknown at this point exactly which individuals made the decision to secretly record

Plaintiffs and to thereafter use the recording and the transcript of the recording against each of the Plaintiffs' interests during the course of their Depositions. Plaintiffs seek the protection of the New Jersey John Doe Rule and would seek to amend this Complaint pursuant to the John Doe Rule when and if the names of all of the John Doe Individuals Who Secretly Recorded Plaintiffs are revealed through discovery.

**WHEREFORE**, each of the Plaintiffs demand damages in this case as against the John Doe Decision-makers (Plural 1-10) as defined above, for all damages that may be available pursuant to the New Jersey Law Against Discrimination and for such other relief as the Court or jury may deem just and appropriate.

LAW OFFICES OF RICHARD L. PRESS & ASSOCIATES, LLC

Richard L. Press, Esquire
Attorneys for Plaintiffs

Dated: July 25, 2014

## DEMAND FOR JURY TRIAL

Demand is hereby made for Trial by jury on all issues contained herein pursuant to *Rule 4:17-1(b)(ii)*.

30

## NOTICE OF TRIAL COUNSEL

PLEASE TAKE NOTICE that pursuant to *Rule 4:25-4*, Richard L. Press, Esquire is hereby designated as Trial Counsel in the above captioned litigation on behalf of the Law Offices of Richard L. Press & Associates, LLC, as attorneys for Plaintiff.

LAW OFFICES OF RICHARD L. PRESS & ASSOCIATES, LLC

Richard L. Press, Esquire
Attorneys for Plaintiffs

Dated: July 25, 2014

## CERTIFICATION UNDER *RULE 4:5-1*

I hereby certify that there is a related action *Lana Chin, et al v. Trump Taj Mahal Associates, LLC, Docket No. ATL-L-3099-13*. I certify that there are no other parties to my knowledge who should be joined in this action at this time.

Nothing contained in this Complaint shall be construed or deemed to be an admission, of any kind, against Plaintiff. This is not a Verified Complaint and is a document prepared by counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

LAW OFFICES OF RICHARD L. PRESS & ASSOCIATES, LLC

Richard L. Press, Esquire
Attorneys for Plaintiffs

Dated: July 25, 2014

31

**SERVE**

RECEIVED
ATLANTIC COUNTY

AUG 05 2014

SHERIFF'S OFFICE

3**ERVED** _Trump Ent. Resorts._

ON _Linda Tomarchio_

SHERIFF'S OFFICER

I hereby deputize and appoint

_T C Murphy_

to serve within writ

witness my hand and seal

This _8/6/14   1535_   20___

Sheriff

SERVE

SERVED Trump TAJMahal Associa...

ON LindA Tomarchio

J C...

SHERIFF'S OFFICER

I hereby authorize and appoint
TC Murfy
to serve within writ

witness my hand and seal

This 8/6/14 1535 20...

Frank Balles
Sheriff

RECEIVED
ATLANTIC COUNTY

AUG 0 5 2014

SHERIFF'S OFFICE

**SERVE**

**SERVED** John M. Donnelly esq.

ON Linda Temarch o

SHERIFF'S OFFICER

I hereby deputize and appoint

T C Murphy

to serve within writ

witness my hand and seal

This 8/11/14 20

Frank Buller

Sheriff

RECEIVED
ATLANTIC COUNTY

AUG 0 5 2014

SHERIFF'S OFFICE